UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE GUADALUPE CALDERON,<br><br>Plaintiff,<br><br>v.<br><br>LAWRENCE GAMBOA, et al.,<br><br>Defendants. | Case No. 1:19-cv-00167-EPG (PC)<br><br>**FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF ALL CLAIMS AND DEFENDANTS**<br><br>(ECF No. 18)<br><br>**OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE (21) DAYS**<br><br>**ORDER DIRECTING CLERK TO ASSIGN DISTRICT JUDGE** |

Jose Calderon ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff filed the complaint commencing this action on November 20, 2018. (ECF No. 1). The Court screened the complaint, finding no cognizable claims and giving Plaintiff leave to amend, on October 7, 2019. (ECF No. 17). Plaintiff filed a First Amended Complaint ("FAC") on October 18, 2019. (ECF No. 18). Plaintiff generally alleges that he was misdiagnosed as having gout for years, while the correct diagnosis was myopathy.

The Court has reviewed the FAC and recommends dismissing the FAC without leave to amend. Plaintiff may file objections to these findings and recommendations within twenty-one days of the date of service of this order, which will be reviewed by the district judge.

\\\

\\\

1

## I. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). As Plaintiff is proceeding *in forma pauperis* (ECF No. 6), the Court may also screen the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. Id. at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. Iqbal, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after Iqbal).

\\\
\\\
\\\

## II. SUMMARY OF PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff claims that while incarcerated at Salinas Valley State Prison ("SVSP"), he was medically treated for gout over a range of nine years. However, there was no evidence of Plaintiff having gout and newer examinations showed this was a misdiagnosis by Defendant Magdy on August 13, 2009. On May 11, 2018, Rheumatology confirmed the misdiagnosis and determined that Plaintiff is actually suffering from myopathy.

Plaintiff spent about five years in SVSP. He was seen there by Defendant Dr. Danials Magdy and Defendant Dr. Lawrence Gamboa. Plaintiff always told them that he was losing strength and mobility. About a year later he was told that he had "gout." Plaintiff believed them. Later, when Plaintiff educated himself about gout, he learned that his symptoms were not related to gout. His feet, legs, and right big toe never got inflamed. Plaintiff told Defendant Dr. Magdy and Defendant Dr. Gamboa that perhaps his disease or condition was something else. Plaintiff was also misdiagnosed with left ankle pain.

Plaintiff started taking Allopurinol for gout. His health got worse. Plaintiff told his doctors he could not run or jump. On January 31, 2009, and May 9, 2010, Plaintiff kept complaining about pain.

On March 8, 2010, Plaintiff "was misdiagnosed with 'chronic arthitis [sic]' and that 'gout' was normal." But his doctors kept telling him that he had gout.

On March 22, 2011, Plaintiff told Defendant Dr. Gamboa that he still had pain.

On June 9, 2011, Defendant Dr. Gamboa found out that Plaintiff had many bacteria, yet he never told Plaintiff about the bacteria.

On January 18, 2012, Plaintiff submitted a CDC 7362 form, stating that he had shortness of breath and that on two occasions he almost passed out.

On August 28, 2012, Defendant Dr. Gamboa knew that Plaintiff's uric acid was in range, but kept telling Plaintiff that he had gout.

On September 9, 2012, Plaintiff submitted another CDC 7362 form, stating that all he wanted was to sleep, and that he was feeling very feeble. His doctors kept telling him that this was due to the gout.

On October 8, 2012, on a request form 22, Plaintiff told Defendant Dr. Gamboa that he did not care about Plaintiff. Plaintiff told Defendant Dr. Gamboa that if he gets sicker, and he finds out the Dr. Gamboa was aware but did not do anything, he would sue Dr. Gamboa.

On March 3, 2013, Plaintiff requested the assistance of a translator.

In a note dated March 14, 2013, Plaintiff stated that he did not believe he had gout.

On April 2, 2013, Plaintiff requested an MRI, but did not receive one.

Plaintiff was transferred to Corcoran State Prison on or about May 2013. Plaintiff was medicated for the misdiagnosed gout from May of 2013 until October of 2017 at Corcoran State Prison. Throughout this time Plaintiff always told his doctors that he was losing his mobility and strength. None of the doctors took the time to re-evaluate him.

Defendant Dr. Jong Moon prescribed Plaintiff Allopurinol for gout when Plaintiff arrived at Corcoran State Prison. Defendant Dr. Moon did not re-evaluate Plaintiff to make sure he had gout. Plaintiff's medical file stated that uric acid was normal, but Defendant Dr. Moon did not take this into consideration. On February 28, 2013, Defendant Dr. Moon ordered a blood test, which showed Plaintiff's uric acid in range. Yet, Defendant Dr. Moon did not stop the medication for gout.

On or about June 24, 2016, Defendant Nurse Practitioner Isabel Mathos saw Plaintiff. She ordered more blood tests due to the lipomas on Plaintiff's lower back. She allowed the gout medication to continue to be administered. On or about June 12, 2016, Plaintiff told Defendant Mathos that he did not have any swelling or inflammation. Plaintiff had a blood test on or about February 27, 2016, which came back within normal limits. Gout was stable, but she did not stop the medication. On or about July 29, 2015, Plaintiff told Defendant Mathos that he was not able to jump or run, and that his knees were very weak. Plaintiff tried to jump in front of her. Plaintiff also laid down on the floor to show her that he was not able to do even one push-up. Defendant Mathos looked at him and smiled. She ordered a knee brace and insoles, but Plaintiff never received them. On a blood test Defendant Mathos discovered that Plaintiff's calcium and creatinine were out of range, but "[s]he never informed."

On or about August 8, 2016, Defendant Dr. M. Mays saw Plaintiff. Defendant Dr.

Mays denied Plaintiff a special diet and informed Plaintiff that his medical records did not show any indication of gout.

On or about August 11, 2016, Defendant Dr. Mays reported a blood test showing that Plaintiff's calcium was 10.5 out of range, but she did not inform Plaintiff.

On or about September 8, 2016, Defendant Dr. Mays stated that a review of Plaintiff's current medical records does not demonstrate any objective indication of gout. She also stated that Plaintiff's physical complaints may be arising from some other condition. Yet, she did not stop the medication.

On September 19, 2016, Plaintiff stated on a 602 that a review of his current medical records does not demonstrate any objective indication of gout. Plaintiff complained that he had been given medication for something he did not have. Plaintiff accused the medical department of committing a fraud against the federal government and state treasury, as these agencies paid for paying for medication that was not needed.

Defendant Dr. Mays did not stop the medication for gout.

On or about September 15, 2016, Defendant Dr. Br. Phi saw Plaintiff and ordered blood tests and x-rays. Defendant Dr. Phi allowed the gout medication to continue, and Plaintiff continued taking his prescribed medication. On or about April 24, 2017, Defendant Dr. Phi saw Plaintiff again. Plaintiff told him that he had fatigue and low energy. Defendant Dr. Phi noticed that Plaintiff's right knee is greater than his left. Defendant Dr. Phi stated "questionable gout uric acid level" stable at 5.4, continue with Allopurinol. He also stated it could be mental health related. A blood test reported on September 21, 2016, by Defendant Dr. Phi discovered that Plaintiff's creatinine was out of range, but Defendant Dr. Phi never informed Plaintiff.

On of about June 21, 2017, Defendant Nurse Practitioner Patricia Rouch saw Plaintiff and ordered more blood tests. She diagnosed Plaintiff with scoliosis due to his back being crooked and lipomas. Defendant Rouch allowed the gout medication to continue, and Plaintiff continued taking his prescribed medication. Through a blood test Defendant Rouch discovered that Plaintiff had creatinine kinase, but she did not tell Plaintiff. Instead, she told him he had

5

scoliosis, which was a misdiagnosis. Plaintiff told her he was losing his mobility. She made Plaintiff remove his t-shirt and asked why Plaintiff's hands were so slender. Plaintiff showed her that he could not jump. Defendant Rouch also told Plaintiff that if he were in Mexico he would not be receiving the treatment he was getting in this country, and that he would be sleeping without a mattress.

On or about November 1, 2017, Defendant P.A. Nancy Siegrist saw Plaintiff and ordered more blood tests, along with a feces test. She allowed the gout medication to continue. She stated that Plaintiff could be suffering from stomach bacteria and blood bacteria.

Plaintiff arrived at Avenal State Prison on or about October 3, 2017. Without reviewing his medical file, Defendant P.A. Nancy Siegrist and Defendant Dr. Jasmine Biol prescribed Allopurinol for gout. When Plaintiff saw Defendant Siegrist, Plaintiff told her how he was feeling. She spent some time reading Plaintiff's file and asked some questions. She then spoke with another person and stated that Plaintiff was really sick. She ordered a blood test and a fecal test. Plaintiff told her that his problem was weakness.

The next time Plaintiff went to see the doctor he was seen by Defendant Dr. Biol, who took away his lower bed chrono. Plaintiff told her that he was very sick, but she told Plaintiff the he was young and needed to drink more water and work out. Plaintiff told her that his whole body was shutting down and he was always in pain.

The third time he went to see the doctor he was seen by Defendant Siegrist. He asked if she could be his doctor, but she said she was working in another yard.

On or about November 16, 2017, "both defendants" knew that Plaintiff had elevated creatine kinase, but they did not stop the gout medication. One of these defendants noted that Allopurinol-D can cause myositis.

In February of 2018 Defendant Dr. Biol stopped the gout medication because it was causing diarrhea.

On May 11, 2018, it was confirmed that Plaintiff did not have gout.

When Defendant Dr. Biol stopped the medication for gout, she told Plaintiff it was the cause of his diarrhea. She also told Plaintiff to stop working out, but did not say why. She

never told Plaintiff that he could have myopathy. She always lied to Plaintiff. Plaintiff has a fatty liver, but she told him the test was normal. Plaintiff told her she was lying, because Plaintiff already knew he had a fatty liver, but she did not want to tell him.

On or about May 11, 2018, Plaintiff was taken to Rheumatologist Dr. R. Kotha, who affirmed that Plaintiff was not suffering from gout. Dr. Kotha told Plaintiff that his real condition is myopathy. For more than a year Plaintiff has been treated for myopathy.

In February of 2018 a doctor working for the National Lawyers Guild, Dr. Jamie Weinstein, independently reviewed Plaintiff's medical records. She believes that Plaintiff's pain and weakness are not caused by gout. She also did not believe that Plaintiff had arthritis or scoliosis.

Plaintiff's health has deteriorated. He has lost all strength to function properly, and suffers from pain on his back. Lipomas have built on his back, but Plaintiff was informed that lipomas are not supposed to cause pain. Now, Plaintiff's back if inflamed and the pain in his back is "getting out of control."

### III. ANALYSIS OF PLAINTIFF'S CLAIMS

#### A. Section 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

Additionally, a plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691, 695 (1978).

**B. Deliberate Indifference to Serious Medical Needs in Violation of the Eighth Amendment**

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006), (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately

indifferent." Id. (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992) (citation and internal quotations marks omitted), overruled on other grounds by WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (*en banc*)).

Deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 (citation omitted). Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 836-37 & n.5 (1994) (citations omitted).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004). Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. To establish a difference of opinion rising to the level of deliberate indifference, a "plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

The Court finds that Plaintiff has failed to state a cognizable Eighth Amendment claim against any defendant. Plaintiff's complaint largely stems from the allegation that Defendants treated Plaintiff with gout medication, even though, as it turned out, Plaintiff does not have gout. However, there is no indication that any defendant was deliberately indifferent to Plaintiff's serious medical needs under these legal standards. It appears that every defendant ordered some form of treatment and/or test. While the gout diagnosis was allegedly incorrect,

9

there are no allegations suggesting that any defendant prescribed gout medication despite knowing that Plaintiff did not have gout, or that any defendant purposefully failed to respond to Plaintiff's medical needs. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. Even if Plaintiff's doctors were wrong with their diagnosis, this alone is not enough to establish a constitutional claim.[1]

Plaintiff does make allegations that certain defendants did not inform him of certain test results, but there are no allegations in the complaint that this failure to inform harmed Plaintiff or that the Defendant medical professional believed that withholding such information would harm him.

## IV. CONCLUSION AND RECOMMENDATIONS

The Court has screened Plaintiff's FAC and finds that Plaintiff failed to state any cognizable claims. Thus, the Court recommends that Plaintiff's FAC be dismissed, with prejudice, for failure to state a claim, and that the Clerk of Court be directed to close this case.

The Court does not recommend granting further leave to amend because the Court provided Plaintiff with an opportunity to amend his complaint with the benefit of the legal standards above, and Plaintiff filed his FAC with the guidance of those legal standards.

These findings and recommendations will be submitted to the district judge assigned to this case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **twenty-one (21) days** after being served with these findings and recommendations, Plaintiff may file written

---

[1] The Court does not address whether Plaintiff has stated a tort claim for negligence or medical malpractice against any defendant. Plaintiff does not assert such a claim in his complaint. Additionally, Plaintiff did not plead compliance with California's Government Claims Act. California's Government Claims Act requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board, formerly known as the State Board of Control, no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950–950.2. Presentation of a written claim, and action on or rejection of the claim are conditions precedent to suit. State v. Superior Court of Kings County (Bodde), 32 Cal.4th 1234, 1245 (Cal. 2004); Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995). To state a tort claim against a public entity or employee, a plaintiff must allege compliance with the Government Claims Act. Bodde, 32 Cal.4th at 1245; Mangold, 67 F.3d at 1477; Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 627 (9th Cir. 1988).

objections with the Court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (quoting <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

    Additionally, IT IS ORDERED that the Clerk of Court is directed to assign a district judge to this case.

IT IS SO ORDERED.

Dated: **October 30, 2019**      /s/ *Eric P. Grosjean*
UNITED STATES MAGISTRATE JUDGE